UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| OUMAR SIDIBE,<br><br>                Plaintiff,<br>    v.<br><br>MEI-GSR HOLDINGS LLC DOING BUSINESS AS GRAND SIERRA RESORT AND CASINO; MOHAMMAD RAFAQAT,<br><br>                Defendants. | Case No. 3:19-cv-00681-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Oumar Sidibe sued Defendants MEI-GSR Holdings LLC, doing business as the Grand Sierra Resort ("GSR"), and Mohammad Rafaqat for race and religious discrimination under 42 U.S.C. § 2000(a), Title II of the Civil Rights Act of 1964 ("Title II"), and 42 U.S.C. § 1981 ("Section 1981").[1] (ECF No. 1.) Before the Court are Plaintiff's motion for a preliminary injunction (ECF No. 2) ("PI Motion"), and Defendants' motion to dismiss (ECF No. 12) ("Dismissal Motion").[2] On March 23, 2020, the U.S. Supreme Court issued its opinion in *Comcast Corp. v Nat'l Ass'n of African Am.-Owned Media, et al.*, 589 U.S. \_\_\_\_, 2020 WL 1325816 (2020) ("*Comcast*"), *available at* https://www.supremecourt.gov/opinions/19pdf/18-1171_4425.pdf. As further explained below, the Court finds that *Comcast* may impact the Dismissal Motion. The Court will therefore order the parties to submit supplemental briefs on the impact of *Comcast* on the

---

[1] Plaintiff also initially asserted a negligence claim, but he has since withdrawn that claim. (ECF Nos. 16 at 24, 19 at 5 (pointing out that Plaintiff withdrew his negligence claim).) The Court therefore deems this claim withdrawn.

[2] The Court also reviewed the parties' responses and replies. (ECF Nos. 13, 15, 16, 19.)

Dismissal Motion and Plaintiff's Complaint, and defer ruling on the Dismissal Motion. However, the Court will deny Plaintiff's PI Motion at this time because the Court finds that Plaintiff has not demonstrated he will likely suffer irreparable harm if the Court does not issue a preliminary injunction.

## II. DISMISSAL MOTION (ECF NO. 12)

As mentioned above, Plaintiff brings both a Section 1981 and a Title II claim. In *Comcast*, the Supreme Court held that a Section 1981 "plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast*, 2020 WL 1325816, at *7. *Comcast* abrogated a Ninth Circuit decision upon which Plaintiff relies on in his briefing. *See id.* at *3. (*See also* ECF No. 16 at 24 (citing *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns Inc.*, 915 F.3d 617, 626 (9th Cir. 2019).) More generally, *Comcast* casts doubt on much of Plaintiff's response to the Dismissal Motion as to Plaintiff's Section 1981 claim. Moreover, Plaintiff argues that the Court's analysis of his Title II claim should be essentially the same as its analysis of his Section 1981 claim. (ECF No. 16 at 19 (citing *Soloman v. Waffle House, Inc.*, 365 F.Supp.2d 1312, 1331 (N.D. Ga. 2004).) Thus, even according to Plaintiff, *Comcast* likely has a big impact on how the Court should analyze the Dismissal Motion and Plaintiff's claims as alleged in his Complaint.

*Comcast* now controls the Court's analysis of Plaintiff's Section 1981 claim, and perhaps his entire case (*see id.* (stating that the Section 1981 and Title II analyses are the same))—but it issued after the Dismissal Motion was fully briefed. Thus, in the interests of fairness and issuing an informed ruling on the Dismissal Motion, the Court will direct the parties to submit supplemental briefs on *Comcast*'s impact on this case. The Court defers ruling on the Dismissal Motion until after it has considered those supplemental briefs.

## III. PI MOTION (ECF NO. 2)

### A. PI Motion Standard

"'An injunction is a matter of equitable discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"

*Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 32 (2008)). To qualify for a preliminary injunction, a plaintiff must satisfy four requirements: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of equities favors the plaintiff; and (4) that the injunction is in the public interest. *See Winter*, 555 U.S. at 20.

### B. Relevant Background

The following facts are adapted from the Complaint. (ECF No. 1.) Plaintiff is a black Sunni Muslim originally from Mali. (*Id.* at 2.) He was invited to a party at the VIP swimming pool at GSR by Mr. and Mrs. Campbell, his work supervisor (at Tesla) and his wife. (*Id.* at 4.) The Campbells had contracted with GSR to reserve a cabana by the pool. (*Id.* at 3.) They also invited several other people to join them for the day. (*Id.* at 4.) The Campbells and all of their invited guests were African-American, but everyone else at GSR's VIP pool that day was white. (*Id.*)

After Plaintiff spent some time in the pool and used the bathroom, he returned to the Campbell's cabana to find the Campbells talking with Defendant Rafaqat, GSR's head of security, and several other GSR employees. (*Id.* at 6.) Defendant Rafaqat accused Plaintiff of acting weird in the pool and touching himself inappropriately in the bathroom—based on, Rafaqat later explained to Plaintiff when he returned a week later to discuss it, reports from "two different people, at two different times, at two different locations complaining about your conduct." (*Id.* at 6, 9.) Though Plaintiff explained to Rafaqat that he did not do anything inappropriate in the pool or the bathroom, Rafaqat kicked him out of the pool area, and banned him from GSR altogether. (*Id.* at 7-10.)

Plaintiff explains the bathroom incident in his Complaint. He was not touching himself inappropriately—he was practicing Wudu, a ritual purification following urination or defecation necessary to remain pure for prayer that, in this case, meant cleaning his genitals with a small cup of water over a urinal once he finished urinating. (*Id.* at 2-3, 5-6.) He is not sure what acting weird in the pool meant—and told Rafaqat that when Rafaqat

first approached him—but also denies he was doing anything inappropriate in the pool. (*Id.* at 6.)

Plaintiff's core allegation is that he was kicked out of GSR, and is now banned from the premises, without being given a fair opportunity to explain his side of the story—though a white person would have been given such an opportunity. (*Id.* at 11-14.) As everyone else at the VIP pool not in the Campbells' party was white, and Plaintiff was the only black person in the pool at the time he was complained about, Plaintiff "alleges that the complaints of white persons, without proof, over his objection, were used to summarily expel him, and to embarrass and humiliate him and to treat him differently and other guests in the VIP section." (*Id.* at 11.) Getting kicked out and banned from GSR was particularly embarrassing and humiliating to Plaintiff because he is a private, modest person, and Mr. Campbell is his supervisor at work. (*Id.* at 7-11.) Further, "Plaintiff alleges that GSR's race-neutral reason for the challenged ejection, that two people made identical complaints about him, is a sham designed to conceal its discriminatory motive, to summarily rid itself of a black Muslim guest it did not want on the premises." (*Id.* at 13.)

As to his PI Motion, Plaintiff alleges that he "faces a real and immediate threat that he will be wronged again, in that should he attempt to access, return to, or utilize any of the services and benefits offered by GSR, as a guest, as an invitee, or as a third party intended beneficiary, or in any way whatsoever, he would be expelled again, arrested for trespass, or face a potential criminal charges all of which constitutes substantial irreparable injury." (*Id.* at 10.) Moreover, "Plaintiff wants the ban against him lifted so that he may return to the GSR if he so chooses. Plaintiff has friends who occasionally utilize the GSR and wants to be able to accompany them if he so chooses." (*Id.* at 16.) However, he does not allege that he has any firm plans to return to GSR, or has been invited back there by anyone, but has had to decline the invitation because he is banned from GSR. (*See generally id.*)

In his PI Motion, Plaintiff specifically asks that the Court "enjoin any future discrimination against him by the GSR on the basis of race and religion in the use and

enjoyment of its facilities and issue an Order that he be immediately admitted to the facilities at the GSR on the same basis as white persons and those of non-Muslim faiths." (ECF No. 2 at 23.)

### C. Discussion

Plaintiff's arguments in his PI Motion are perhaps better directed to a request for permanent injunctive relief following a win on the merits than preliminary injunctive relief. While the Court can, of course, see how the public has an interest in ensuring GSR complies with the law, how Plaintiff's ejection from GSR was emotionally damaging, and why he might want a declaration that GSR not discriminate against him in the future (ECF No. 2 at 18-20, 23), the Court cannot see why Plaintiff needs his ban from GSR lifted now, before this case is resolved on the merits. This is primarily because Plaintiff has not alleged or argued that he has any imminent need to go to GSR.

At the outset, while "[l]ikelihood of success on the merits is the most important factor" *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019), *cert. denied sub nom. Edge v. Everett, WA*, Case No. 19-976, 2020 WL 1124447 (U.S. Mar. 9, 2020) (citation omitted) that this Court must consider in determining whether to issue a preliminary injunction, the Court will set that factor aside for now because both parties rely on authority that may no longer be good law in light of *Comcast* in the likelihood of success portions of their arguments on the PI Motion. (ECF Nos. 2 at 11-18, 13 at 4-8, 19 at 1-11.) The Court therefore focuses its analysis on the irreparable harm prong of the *Winter* factors.

The Court will deny Plaintiff the extraordinary remedy of a preliminary injunction here because he has failed to demonstrate he will likely suffer irreparable harm if one does not issue. More specifically, Plaintiff argues that his irreparable harm is the emotional injury caused by GSR's alleged discrimination. (ECF No. 2 at 18-20.) Defendants counter in pertinent part that Plaintiff "has made no showing, however, that it is likely that work or other social functions he wants to attend will be occurring at GSR, so he cannot establish

the requisite element of likely harm for that reason alone." (ECF No. 13 at 9.) The Court agrees with Defendants on this dispositive point.

As Defendants point out, as to irreparable harm, Plaintiff merely argues that he "resides and works in Reno, and wants to be able to go to the GSR if other work or social functions occur at the resort[.]" (*Id.* (citing ECF No. 2 at 20).) Crucially, Plaintiff does not allege or argue that he has been invited to an event at GSR that he is now unable to attend, much less an event occurring in the near future, or that he had tried to go to GSR and been turned away—which could have convinced the Court he required preliminary injunctive relief. (*See generally* ECF No. 1 (lacking any such allegations).) Instead, Plaintiff expresses no more than a desire to have the ability to go to GSR if he wants to in the future. (ECF No. 2 at 20.) This is too speculative to merit the extraordinary remedy of preliminary injunctive relief. *See Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original); *Nevada v. United States*, 364 F. Supp. 3d 1146, 1156 (D. Nev.), *appeal dismissed*, 783 F. App'x 700 (9th Cir. 2019) (denying request for preliminary injunction where the plaintiff's arguments as to irreparable harm were "too speculative to rise to the level of the required likelihood of irreparable harm"). And while Plaintiff may well be entitled to permanent injunctive relief if he prevails on the merits of his claims, he has presented no allegations or argument explaining why he needs such relief now, pending the Court's resolution of this case on the merits. (*See generally* ECF Nos. 1, 2.)

The Court therefore finds that Plaintiff has failed to demonstrate he will likely be irreparably harmed if a preliminary injunction does not issue here. And the Court need not consider the additional *Winter* factors having found that Plaintiff fails to establish the necessary requirement of likely irreparable harm. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (declining to consider the remaining two *Winter* factors when

neither likelihood of success on the merits nor irreparable harm prongs favored the plaintiff). In sum, the Court will deny Plaintiff's PI Motion.

**IV. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Plaintiff's motion for preliminary injunction (ECF No. 2) is denied.

It is further ordered that the parties must both submit supplemental briefs of no more than 10 pages regarding the impact of *Comcast* on Defendants' Dismissal Motion within 10 days. As such, the Court defers ruling on the Dismissal Motion at this time.

DATED THIS 27th day of March 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE